Ms. McKee, would you announce our third case for argument? Case number 24-3578 from the District of Minnesota, Kristi VonDeylen v. Aptive Environmental. Ms. Messner. Thank you, Ron. Good morning. May it please the Court. My name is Lisa Messner. I'm here on behalf of Aptive Environmental, and we have appealed from the District Court's ruling in this case that denied Aptive's motion at the District Court level for an order-compelling arbitration of Ms. VonDeylen's underlying claims. The issue before the Court I would respectfully submit is a narrow one. It is whether the parties have agreed to arbitrate this specific dispute. And in this case, the District Court focused on one portion of the overall contract between Aptive and Ms. VonDeylen. It focused on the portion that had to do with arbitrating disputes related to the services arising under the agreement, which were pest control services. However, the contract language was much broader than that, and the contract also indicated that it was not only related to services under the agreement or the agreement itself, but to the relationship between you and Aptive, which would have been Ms. VonDeylen and Aptive. So how far does this go? So let's say 25 years down the road, you receive a mailing that shows you owe Aptive $250 for a treatment last week, and you haven't had treatment from them for 25 years. Arbitral? So there is a survivability clause, as you've clearly identified, Judge Strauss, in the agreement. And so I think your question's focusing on how long does that survivability clause last. I would respectfully submit not into perpetuity. And although there's not a lot of case law specifically on point, one area that could be drawn on by your honors would be looking, for example, at a statute of limitations period. We see survivability clauses in contracts all the time. Could it also go to the relationship, right? I mean, there's a commercial relationship between the parties when the services are being provided. Sure. And that relationship, in some sense, comes to an end when those services end, right? I forget the language here. It's arguably broader than that. But does the relationship, if you have a relationship at one point and you have the statutory language, I don't know how you put a time limit on it. Because if it's, you know, if we met each other and had a relationship and you got my phone number from that and you use it 40 years later, isn't your argument unbounded in time? So, two points to that. This wasn't 40 years in time. But it's a hypothetical. I mean, where is the... Sue, I think that what the court needs to focus on is, you know, again, there's survivability here. And the point of the survivability is just that. It survives the contract. I would agree that something in perpetuity, 20 years, 40 years, would not bear a reasonable period of time. But looking at what is... There's no time limit inherent in that language. What authority would we limit it? Just reasonableness? The standard would be reasonableness. And we do see survivability contracts. And so, one thing to draw on by way of... So, this is two years, right? I mean, what if we find that to be an unreasonable amount of time, given the sort of services offered, we could just say it's unreasonable? I think that that would be the standard, would be reasonableness. One thing to draw on, potentially, would be looking at, for example, a statute of limitations. So, for example, under the Telephone Consumer Protection Act, which is what the underlying claims are, and the merits of those aren't really at issue. It's arbitrability. But that's a four-year statute of limitations. And I would also point out that although the services terminated, there was still the underlying relationship as defined within the contract. There was still a relationship there. It was a former customer. So, that didn't terminate. What sense is that a relationship? What's in the record about contact, communications? In what way was there a relationship ongoing? It was a former customer. That would be the... The past relationship. It was, I would indicate that it's a current relationship based on being a past customer. The services terminated. The contract necessarily, you know, the services provided under there did. The relationship between the parties did not terminate. Suppose that, just to extend that, now we're going from the when to the what. Suppose that a pest control person just showed up, thought they had a scheduled thing, the computer messed up, sprayed the whole house, customer called and said, I never ordered this. Is that arbitrable or not? And this is after the end of the period. So, this happens ten days later or two years later. The time doesn't matter. Is that arbitrable as well? It would still go back to the underlying relationship. So, in your hypothetical situation, a person shows up, it's based on some kind of error. It would still be based on the fact that there had been a preexisting relationship between the customer and active. And that would be the basis of it. The dispute would be, does the customer owe for those services for which he or she did not pay? It would still fall under the relationship, in our view, of the contract. It would still go back to that underlying relationship. What if your client had started offering garbage services and was trying to charge for purported garbage services? In other words, if they were different services, under your argument, if it's just the relationship, that would arguably still be subject to arbitration. Is that correct? That's correct. And really, to your point, you can draw on this Court's own opinion in PARM that really focuses in on when you have a broad type of arbitration provision, that the question isn't whether that the factual allegation — you flip the script in saying that. Is it falling outside of arbitration? When it's broad, you should be looking at things like, does it touch matters related to the contract? The relationship touches matters related to the contract. Is the inquiry more focused in on, if you will, the scope and nature of the case? Let me ask, the district court relied on our Anderson case. We suggested that but-for causation wasn't enough. How do you distinguish Anderson from this case? I do see I'm running into rebuttal time, but of course, we'll address your question. The distinguishing factor is the breadth of the contract language. It's the contract language. Correct. That is what we would submit. Really quickly, we talked a lot about reasonableness. I just want to know, are we talking solely — is the issue on appeals solely the interpretation of this language in the agreement, or is there an argument here that it's too broad, that the arbitration agreement is too broad and violates public policy or anything like that? That was not anything that was addressed by the district court. That is not an issue in our view in this case. One other quick factual question. Is there anything in the record about whether the recipients of the text were all former customers, or was it broader than just former customers? This was a putative class action, but the underlying allegations in the operative First Amendment complaint have only to do with Ms. Von Dielen and no one beyond that, no allegations about putative class members. The only information that is alleged in the complaint has to do with text messages alleged to have been received by the appellee. Okay. Thank you. Thank you. I'll reserve the remainder of my time for rebuttal. Thanks so much. Thank you. Good morning, and may it please the court. on behalf of Plaintiff Appellee Chrissy Von Dielen. Aptiv has called these messages, at the core of the case, appointment reminders. But to be clear, Ms. Von Dielen hadn't made any appointments, and Aptiv wasn't continuing to provide any services because Ms. Von Dielen was not a customer anymore. The party's previous term limited service agreement had ended years before, two years before. But it did relate to, to use the arbitration agreement's language, it related to the services performed by Aptiv under this agreement, didn't it? I mean, because it's the same services, we're not talking about trash hauling or something like that. So it had to do, they were trying to provide more of the same services they had already provided. You know, I don't think that it's quite right to say, based on the plain language of the contract, that it related to services under this agreement. For the very reason that that service agreement had already ended. So there weren't any more services. Related to or arising from services that were. Sure. So to answer that question, I think it makes sense to look at the case that Your Honor asked about, which is Anderson, which already defined substantially similar language to what we have in this contract. Is it similar or is it missing the arising out of the relationship? I don't think that's in Anderson, is it? No, it's not. But what is, is language arising under or relating to in any way? And here we have. In Anderson, it's arising under or related to the agreement, not the relationship. Yes, and so. I didn't read relationship to be a little broader. Yes, so I'd like to address both of these questions. So first, we know that first clause, arising under or relating to in any way, means direct relationship from Anderson. And so then you take that definition and you look at the plain language here. And I know Your Honors are focused on the third category of disputes that the arbitration provision here covers. So it says, or the relationship between you and Aptiv resulting from any of the foregoing. The foregoing, that's referencing the service agreement. That's the first category. Or the second category, services performed by Aptiv under this agreement or any other agreement. So the natural reading of that third category is the contractual relationship from the parties based on either the service agreement or another agreement. These messages don't have a direct relationship to services performed by Aptiv under the service agreement. Well, but here's the problem I'm having with it. That's why I asked you about that second clause, because I know it is related to that third clause. But the third clause can't be meaningless, right? I mean, this is not one of those cases in which it's a list of three things saying the same thing. And so what that means is that third clause must expand in some way the first and second clause. And I'm trying to figure out how it expands it. Is there a plausible interpretation under your view of what that third clause means that doesn't just conflate into the second and first clause? Sure, I think so. There are things that would be covered by a relationship that don't specifically refer to the services performed by Aptiv. For example, did Ms. Von Dahlen have an outstanding bill? Your Honor asked, and I would like to address the survival clause because I know you were focused on that. If Aptiv had come back and said, well, actually these messages were to collect on an unpaid bill related to the services that we provided under the service agreement, that could relate to the party's contractual relationship and what Ms. Von Dahlen's contractual obligations were. They haven't said that. Aptiv hasn't argued that there's actually any relationship between these messages and the service agreement. Because, again, Aptiv wasn't providing services pursuant to that agreement. It had ended years before. So your view is, and we'll get to the survival clause, but your view is anything that happened in that year that led to something later. Like, you know, nine months in, you had service and you haven't paid and it's year two or year three. But it has to be during that policy period that the underlying action started. Yeah. So when coverage, I'm going to state in plain terms. So if somebody showed up at year one and one day and they sprayed and it was after the service agreement was over and said, hey, to the client, you have to pay, that would not be covered because it's outside the policy period. You know, I think that would be a harder question than what we have here, because there's been no argument that these messages were about services to be performed under the service agreement. So it might be a closer call if Aptiv were to argue and say, you know, there was confusion. We thought that we were still providing services. Turns out we weren't. There might be more of a nexus with the contract. But I think the key here is that Aptiv hasn't argued that these messages had anything to do with the services that it previously provided. It, again, is not seeking to collect on an unpaid bill. It's not trying to schedule appointments for service calls pursuant to this previous service agreement. I think this might be clearer if I do turn to the survival clause. So the effect of that clause is not to expand the categories of disputes that the arbitration provision applies to. Instead, it merely stands to the proposition that if a claim arises after the service agreement has terminated, if it otherwise falls within one of these three categories, then it can be arbitrated. So to give an example, I think, Judge Strauss, your example was a good one. You know, if you get a bill or you get a text message saying you have an outstanding bill of $250 related to the services we provided, that's after the contract period has already ended, but it obviously falls within the scope of this arbitration provision. Another example might be— Even if it's erroneous? Even if it's like you never showed up on that day, so therefore the service wasn't provided, then you get billed for it six months after the policy period's over? Again, I think that would be a harder question than what we have here because the defendant would be putting forward some basis where a court is going to need to construe the terms of the agreement in some way to understand, well, was there still an ongoing relationship? That's just not what we have here. Aptive has not disputed that the service is terminated. You know, although there's some talk that a past relationship with a former customer is a continuing relationship, I don't think that's right. There wasn't an ongoing relationship here. Let me give you what I'm thinking, and you can tell me where I'm going wrong.  I'm assuming that the phone number was obtained as a result of the relationship, and therefore why doesn't this text arise out of the relationship? So I do think that isn't quite right for the reason that Judge Kobus asked about under Anderson, which is that this Court interpreting similar language. It's not similar. Anderson is agreement, not relationship. So if I may. Please, yeah. Again, I think it's not just the categories of covered disputes that matters. It's both what that clause is arising under or relating to in any way in Anderson, which is substantially similar to what we have here. And so when the Court rejected a but-for argument in Anderson, it was based on its interpretation of the meaning a direct relationship, and it said but-for doesn't satisfy a direct relationship. And I think, again, based on the plain language of the contract here, where it's not just a relationship generally. This arbitration provision isn't applying to disputes with a relationship to active generally. There are other contracts out there that say something like that, or to our services generally. It's to our contractual relationship. Can I ask you, along the lines I was asking about earlier, what do you make of the to communicate with me regarding my account, including without limitation to collect outstanding or past due amounts that I owe to active? And in particular, I understand that one of the texts or one of the communications was you need to sign up for auto pay, which to me is communication with me regarding my account. Now, it may be erroneous, but that is about your account. So I think it's actually not about her account under the service agreement. Auto pay, a message about auto pay, is necessarily forward-looking. That's in order to make payments going forward. I think that can fall within a similar forward-looking mentality as some of the other text messages were about upcoming appointments. Those are the kinds of messages that you send to a current customer rather than a previous customer. But you do agree if it was sent during the policy period, even at the end of it, that that would be about your account. Yes. It relies on, again, this didn't happen during the policy period. It happened later, after the account was paid off. That's your interpretation. Yes. I think that it would be a different question if active had tried to collect or urged her to set up auto pay during the party's contractual relationship when there were services being provided. But that's just not at all what's happened here. I see that my time is up. We'd ask that this court affirm under the plain language. Thank you very much. Thank you. So, Ms. Mesner, her response, Ms. Kieschnick's response to my scenario was that you're applying a but-for standard and Anderson requires something more direct. What's your response to that? Anderson does require something more direct. We would submit that this isn't a but-for analysis, that you just go back no further than looking at the plain language of the contract. And under that, it does specify or the relationship. It doesn't tie back to the agreement. And I think to Judge Strauss' point, it was well taken that the content of these messages necessarily all related to the account. Some of them had to do with auto pay. Some of them had to do with appointment reminders. None of them were marketing messages, if you will, asking to re-subscribe. They all still related to the underlying services provided. And so I think that that is a well taken point that was raised. And it doesn't tie back to a but-for analysis. Even though the services under the contract had ended, the relationship between the parties had still been there. It was a former customer relationship. I do see my time is up. If there are any other questions, I'm happy to address them. Otherwise, I appreciate the opportunity to present in front of you today. Hearing none, thank you. All right. Thank you so much. The Court appreciates both counsel's appearance and argument. The case is submitted and will issue an opinion in due course. Thank you.